UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ECOLAB Inc., and NALCO COMPANY, LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water,<br><br>    Plaintiffs,<br><br>v.<br><br>JESSICA GRAILER,<br><br>    Defendant. | No. 3:23-cv-00102 |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPUTER FRAUD AND ABUSE ACT CLAIM**

**I.   PRELIMINARY STATEMENT**

Defendant Jessica Grailer ("Grailer"), upon voluntarily resigning from her employment with Plaintiffs Nalco/Ecolab to join a competitor, misappropriated hundreds of Plaintiffs' files containing highly confidential and trade secret information. Through this action, Plaintiffs are holding Grailer accountable for her misconduct.

Ecolab Inc. and its subsidiary Nalco Company, LLC are global leaders in industrial process and water treatment services, providing high quality water treatment management services to clients in such industries as food preparation, pulp and paper, agriculture, manufacturing, refining, mining, power production, healthcare, pharmaceutical, and high tech. Doc. No. 34 ¶ 11. They provide a broad spectrum of products and services to businesses throughout the United States, including the State of Wisconsin. *Id*. Defendant Grailer was employed by Nalco as an Account Manager until she voluntarily resigned on January 8, 2023. *Id*. ¶¶ 21, 33. On or about January 15, 2023, after Defendant Grailer was separated from employment, and after she had returned her company assigned laptop computer, she accessed Plaintiffs' computer network through the cloud

to access, view, and download numerous documents containing Plaintiffs' confidential and trade secret information. *Id*. ¶ 36. The unlawful conduct of Grailer has resulted in losses, including the cost of investigating and responding to her unlawful conduct. *Id*. ¶ 97.

## II.     NATURE AND STAGE OF PROCEEDING

On February 10, 2023, Plaintiffs filed a Complaint for Injunctive Relief, Damages and Other Relief asserting causes of action against Grailer for breach of contract, violation of the federal Defend Trade Secrets Act ("DTSA"), violation of the Wisconsin Trade Secrets Act, and violation of the federal Computer Fraud and Abuse Act ("CFAA"). Doc. No. 1. On March 15, 2023, Plaintiffs filed their First Amended Verified Complaint for Injunctive Relief, Damages and Other Relief. Doc. No. 34. Grailer then filed her Motion to Dismiss Plaintiffs' Computer Fraud and Abuse Act Claim. Doc. No. 39. Grailer's Motion to Dismiss does not otherwise attack any of the other claims relating to Grailer's misconduct.

Now, contemporaneously with this Response, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint, which moots the majority of Grailer's Motion to Dismiss. While Plaintiffs submit that their current pleadings are sufficient, their proposed Second Amended Complaint removes any doubt.  For the reasons set forth below, the Court should deny Grailer's Motion to Dismiss.

## III.    STATEMENT OF THE ISSUES

Grailer's Motion to Dismiss argues that Plaintiffs failed to state a claim for a violation of the CFAA and asks this Court to dismiss Plaintiffs' Third Count against Grailer. As stated below, Plaintiffs' Amended Complaint pleads facts sufficient to support the claim. Nonetheless, Plaintiffs' proposed Second Amended Complaint further eliminates any doubt. Accordingly, the Court should deny Grailer's Motion to Dismiss in its entirety.

IV. **STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim meets this standard when the plaintiff has pleaded enough facts to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When considering a Rule 12(b)(6) motion to dismiss, all well-pleaded facts should be taken as true and viewed in the light most favorable to the plaintiff. *See Taha v. Int'l Brotherhood of Teamsters, Loc.*, 947 F.3d 464, 469 (7th Cir. 2020).

V. **ARGUMENT**

To establish a civil claim for violation of the CFAA, Plaintiffs must allege that Grailer (1) obtained information through intentional unauthorized access to a computer and (2) caused damage or loss as a result. *See* 18 U.S.C. § 1030(a)(2)(c), (a)(5)(C). Any civil action under the CFAA involving "damage or loss" must satisfy a $5,000 threshold. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 439 (2d Cir. 2004).

A. **Plaintiffs' First Amended Complaint Alleges Facts Sufficient to Find that Grailer Accessed Their Network "Without Authorization."**

Grailer argues that Plaintiffs do not adequately plead that Grailer's access was "without authorization," because Plaintiffs do not allege when they rescinded or revoked Grailer's authorization to access their network. Plaintiff argues that the First Amended Complaint does not contain allegations that Plaintiffs informed Grailer "that she could no longer access documents, files, or email from her work computer, work phones, or personal phone at any point during her 'two weeks' notice' period (i.e., after her resignation and before she was terminated)." Grailer's argument lacks merit as Plaintiffs allege that when Grailer resigned on January 8, 2023, her

3

supervisor advised her that she was relieved of all duties on behalf of Plaintiffs. *See* Doc. No. 34 ¶¶ 33-34. On January 11, 2023, Plaintiffs terminated Grailer's employment. *See* Second Amended Complaint ¶ 36. Further, Plaintiffs allege that Grailer returned her company assigned laptop to Plaintiffs on January 11, 2023, evidencing that her access had been revoked. *See id*. ¶ 35. Grailer's argument regarding a "two weeks' notice" period is perplexing, as Plaintiffs never asked or offered Grailer the opportunity to work a "two weeks' notice" period. In any event, Plaintiffs' Amended Complaint does not contain any allegation regarding a "two weeks' notice" period, or the January 18, 2023 date referenced by Defendant. Accordingly, Plaintiffs have sufficiently alleged that Grailer's employment ended when she voluntarily resigned on January 8, 2023, and that her employment was officially terminated on January 11, 2023. *See id*. at ¶ 33-34.

Set against this backdrop, Plaintiffs' allegations that, on January 15, 2023, after Grailer voluntarily resigned and returned her company assigned laptop, Grailer accessed the Plaintiffs' computer network through the cloud to access, view, and download numerous documents containing Plaintiffs' confidential and trade secret information easily establish that Grailer accessed Plaintiffs' network without authorization. *See* Doc. No. 34 ¶¶ 36-37, 47. As if that were not sufficient, Plaintiffs further allege that on January 8, 2023, after Grailer voluntarily resigned and was instructed that she was relieved of all duties, Grailer downloaded and exfiltrated hundreds of documents from her company assigned laptop to a USB drive. *See* Doc. No. 39-45. Thus, Plaintiffs' First Amended Complaint sufficiently alleges that Grailer accessed Plaintiffs' network and computer without authorization.

Grailer argues that "[t]he only instance in the Amended Complaint where Plaintiffs allege that Grailer accessed documents and files 'after her termination' is in paragraph 38; however, this paragraph is devoid of any date that would indicate when that termination occurred." *See* Doc. No.

4

40 at 6. Grailer argument ignores Plaintiffs' allegations. For example, in paragraph 36 of the Amended Complaint, Plaintiffs allege that "[o]n or about January 15, 2023, **after Defendant Grailer was separated from employment**, and after she had returned her Company assigned laptop computer, she accessed the Plaintiffs' computer network through the cloud…." See Doc. No. 34 ¶ 36.

As Grailer voluntarily resigned on January 8, 2023, she no longer was authorized to access Plaintiffs' computer network. Despite Grailer's argument that Grailer's access was not implicitly revoked when she was terminated, it is clear that the termination of employment explicitly revokes access. "[W]here an employee has certain access to a computer or system associated with her job, that access will be construed as unauthorized within the meaning of the CFAA only where it occurs after the employee is terminated or resigns." *Poller v. BioScrip, Inc.*, 974 F.Supp.2d 204, 233 (S.D.N.Y. 2013); *see also Amphenol Corp. v. Paul*, 993 F.Supp.2d 100, 110 (D.Conn. 2014); *Apple Mortgage Corp. v. Barenblatt*, 162 F.Supp.3d 270, 287 (S.D.N.Y. 2016) ("The defendants' motion for summary judgment dismissing the CFAA claim must be denied because there is evidence that after the employees resigned they accessed emails from the Apply system on their phones and read, forwarded, or deleted emails, even where Apple had failed to limit their access until days after their resignation."); *Estes Forwarding Worldwide LLC v. Cuellar*, 239 F.Supp.3d 918 (E.D.Va. 2017) (Employer sufficiently alleged that former employee accessed protected computer when he accessed employer's cloud storage account after his termination, so as to state claim for a violation of the CFAA).

In *Hat World, Inc. d/b/a Lids Team Sports v. Kelly*, No. Civ. S-12-01591-LKK, 2012 WL 3283486, at *5 (E.D.Ca. 2012), the defendant sought to dismiss the plaintiff's claim for a violation of the Computer Fraud and Abuse Act where the plaintiff alleged that the defendant, during his

employment, accessed the plaintiff's computers and servers for purposes other than company business, and that he accessed the computers and servers after his resignation. The court in *Kelly* granted the defendant's motion to dismiss as it related to his actions while he was employed, which aligns with the Supreme Court's decision in *Van Buren*, but otherwise denied the defendant's motion to dismiss for defendant's actions after he resigned. *See id*. The court concluded that "plaintiff has stated a claim under the CFAA by alleging facts from which the court can plausibly conclude that defendant exceeded his authorized access by continuing to access information stored on company computers and servers after his resignation." *Id*. Similarly, here, Plaintiffs allege that Defendant accessed the Plaintiffs' network after she resigned her employment and her employment was officially terminated. Accordingly, Plaintiffs' allegations regarding Grailer's resignation are sufficient to allege that the gates were down on Grailer's authorization to access Plaintiffs' network and computer.

Plaintiff relies on the Supreme Court's decision in *Van Buren v. United States*, 141 S.Ct. 1648 (2021). However, the decision in *Van Buren* is inapposite to Plaintiffs' allegations. In *Van Buren*, the Supreme Court addressed the situation where an employee, while still employed, accesses information that is otherwise available to the employee with improper motives. *See id.* The Supreme Court concluded that those who have improper motives for obtaining information that they are otherwise authorized to access are not covered by the CFAA. *See id*. at 1662. Here, Plaintiffs allege that Grailer accessed information that she was not authorized to access. Therefore, the decision in *Van Buren* is not applicable.

      **B.**    **Plaintiffs' Amended Complaint Alleges Facts Sufficient to Find that Plaintiffs have Suffered a "Loss."**

Grailer further argues that Plaintiffs' CFAA claim "fails as a matter of law because the allegations do not satisfy the 'damage' requirement." *See* Doc. No. 40 at 10. However, the statue

clearly provides that a claim exists when a person suffers "damage" **or** "loss." Therefore, Plaintiffs do not need to allege that they suffered damage as a result of Grailers' violations.

Plaintiffs have pled that they suffered a "loss" as defined by the statute. The term "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Grailer admits that the majority of courts construe "loss" to include "costs to investigate and respond to computer intrusion or damage." *Bashaw v. Johnson*, No. 11-2693-JWL, 2012 WL 1623483, at *1-3 (D.Kan. May 9, 2012). "Courts have recognized that 'the costs of investigating security breaches constitute recoverable 'losses,' even if it turns out that no actual damage or interruption of service resulted from the breach." *Dreni v. PrinterOn America Corp.*, 486 F.Supp.3d 712, 735 (S.D.N.Y. 2020). Professional service fees incurred for purposes of examining Grailers' company laptop and phones to determine what proprietary company material might have been accessed after Defendant resigned from her employment with Plaintiffs qualify as "losses" under the CFAA. *See id*.

Furthermore, Plaintiffs' Second Amended Complaint specifically alleges that it was necessary to retain a forensic expert to respond to Grailer's violation of the CFAA, conduct a damage assessment, and determine the scope of Grailer's unauthorized access to and misappropriation of Plaintiffs' trade secret and confidential business information. Plaintiffs' Second Amended Complaint also alleges that Plaintiffs' have suffered losses far in excess of $5,000.00, specifically $33,781.25, to date. *See* Second Amended Complaint ¶ 39, 98. Accordingly, Plaintiffs have sufficiently plead that they have suffered a "loss" under the CFAA.

## VI. CONCLUSION

For all the above reasons, Plaintiffs have properly alleged each of the elements of a claim under the Computer Fraud and Abuse Act. Therefore, this Court should deny Grailer's Rule 12(b)(6) Motion to Dismiss in its entirety.

Dated: April 26, 2023

                                                Respectfully submitted,

                                                */s/ Daniel F. Lanciloti*

Daniel F. Lanciloti (admitted *Pro Hac Vice*)
Craig R. Annunziata
James M. Hux, Jr. (admitted *Pro Hac Vice*)
FISHER PHILLIPS LLP
10 South Wacker Drive
Suite 3450
Chicago, Illinois 60606
Telephone: (312) 346-8061
Facsimile: (312) 346-3179
dlanciloti@fisherphillips.com
cannunziata@fisherphillips.com
jhux@fiherphillips.com

**ATTORNEY FOR PLAINTIFFS**

FP 46932224.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 26 day of April 2023 the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system and was served on the following by U.S. mail and e-mail to:

>Johanna Wilbert
>Quarles & Brady LLP
>411 East Wisconsin Avenue, Suite 2400,
>Milwaukee, WI 53202-4428
>Johanna.Wilbert@quarles.com

Respectfully submitted,

 */s/ Daniel F. Lanciloti*

FP 46932224.1