# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

ECOLAB Inc., and NALCO COMPANY LLC
d/b/a Nalco Water, an Ecolab Company and/or
Nalco Water,

                Plaintiffs,

    v.

JESSICA GRAILER,

                Defendant.

Case No.: 3:23-cv-00102-wmc

---

## BRIEF IN SUPPORT OF JESSICA GRAILER'S RULE 37(c)(1) MOTION TO STRIKE THE EXPERT REPORT OF LAURENCE LIEB

---

QUARLES & BRADY LLP

Matthew Splitek (SBN 1045592)
(608) 283-2454
matthew.splitek@quarles.com

Johanna M. Wilbert (SBN 1060853)
Shauna D. Manion (SBN 1091704)
(414) 277-5000
johanna.wilbert@quarles.com
shauna.manion@quarles.com

Lauren C. Bolcar
(202) 372-9600
lauren.bolcar@quarles.com

*Attorneys for Jessica Grailer*

33 East Main Street, Suite 900
Madison, Wisconsin 53703

411 East Wisconsin Avenue
Milwaukee, Wisconsin 53202

2020 K Street NW, Suite 400
Washington, D.C. 20006

**TABLE OF CONTENTS**

INTRODUCTION AND BACKGROUND ................................................................ 1

ARGUMENT ......................................................................................................... 4

I.    Lieb Has Not Disclosed the Basis for His Opinion That Grailer Copied Files to Her USB Thumb Drive on January 8, 2023. ........................................................... 5

    A.    Lieb Withheld His Opinion About How Grailer Could Have Copied Files Without Digital Guardian Recording Her, and He Has Not Disclosed the Basis of the New Opinion He Revealed in His Deposition. ................................. 5

    B.    Lieb Has Not Disclosed *When* He Claims That Grailer Copied Files to Her Thumb Drive. ........................................................................................ 11

    C.    Lieb Has Not Disclosed the Basis for His Opinion That Grailer Copied Files to Her Thumb Drive at Any Time. ..................................................... 18

II.    Lieb Failed To Disclose the Basis for Either His Original Opinion About Grailer's Alleged Activities After Returning Her Laptop or for the New Opinion Revealed in His Deposition. ......................................................................................... 20

III.    The Court Should Strike Lieb's Expert Report Under Rule 37(c)(1). .......................... 27

CONCLUSION ..................................................................................................... 31

## INTRODUCTION AND BACKGROUND

The report of Plaintiffs' forensic expert Laurence Lieb points to a haystack and challenges Defendant Jessica Grailer, a former Ecolab account manager, to show that the haystack contains no needles. Lieb opines that "forensic analysis . . . revealed" that Grailer somehow used her Ecolab laptop to copy hundreds of files to a USB thumb drive without being recorded by the surveillance software Ecolab uses to catch precisely such activity. But he refuses to state *when* Grailer allegedly copied those files, or to specify the "forensic analysis" he allegedly performed to reach his opinion that such copying occurred, or to explain how Grailer could have evaded (and, according to Lieb, did evade) Ecolab's surveillance software. Lieb further claims that an Ecolab log shows Grailer accessing her Ecolab Microsoft 365 account and deleting files after returning her Ecolab laptop. Lieb again offers no supporting analysis for that opinion. Indeed, as he conceded in his deposition, he failed even to consider the correct log when preparing his report. Lieb's report egregiously fails to set forth "a complete statement of all opinions [Lieb] will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Grailer will, if necessary, show in a subsequent motion that Lieb's testimony also is unreliable and thus inadmissible under Fed. R. Evid. 702. But Rule 702 need not be addressed. The Court must strike Lieb's report under Fed. R. Civ. P. 37(c)(1) due to Lieb's independent violations of the disclosure requirements of Rule 26(a)(2).

In his report, Lieb purports to support two primary allegations against Grailer. First, Lieb opines that "forensic analysis . . . revealed" that Grailer used her Ecolab work laptop to copy hundreds of files to her USB thumb drive at an unspecified time or times on January 8, 2023. (*See* Dkt. 113, Expert Report of Laurence D. Lieb dated Nov. 13, 2023 ("**Lieb Report**") ¶ 17–19.) Second, he opines that an "Office365 User Activity Log" shows that after returning her Ecolab laptop on January 10, 2023, Grailer used an "undisclosed" personal computer to "access[]" twenty

1

files through her Ecolab Microsoft 365 cloud account on January 15, 2023, and to "log[] in and open[] and delete[]" other files on different days between January 11 and 18. (*See id.* ¶¶ 22–23, 30; *see also id.* ¶ 16.)

Lieb's disclosures relating to these opinions are deficient in four different ways.

*First*, Lieb nowhere opined in his report how Grailer could possibly have copied files to her thumb drive without being recorded by the "Digital Guardian" data loss prevention tool that Ecolab uses to surveil its employees. (*See* Section I.A below.) Ecolab uses Digital Guardian to record exactly that kind of activity—copying files to a USB thumb drive—that Ecolab and Lieb claim Grailer engaged in on January 8, 2023. The Digital Guardian report of Grailer's activity, however, shows that Grailer did *not* copy *any* files (let alone hundreds) to her thumb drive on January 8, 2023. Lieb is familiar with Ecolab's use of Digital Guardian software: His report explains that Ecolab uses Digital Guardian to catch employees who exfiltrate files to USB drives, and asserts that Lieb's opinions are based in part on his review of Digital Guardian's report about Grailer's activities. But in his report, Lieb kept mum about the fact that Digital Guardian recorded other activity by Grailer—but *not* the copying of any files to her thumb drive—on January 8, 2023. Lieb disclosed no opinion about how Grailer possibly could have copied files to a thumb drive without being caught by Digital Guardian. He finally addressed that question in his deposition, speculating that a lack of internet connectivity after 9:28 p.m. on January 8, 2023 might have prevented Digital Guardian from reporting on Grailer's activity after that time. Lieb disclosed no basis for this new opinion at his deposition. He testified, in fact, that he had done nothing to determine whether any basis existed for his late-disclosed opinion.

*Second*, Lieb has provided multiple, inconsistent opinions about *when* on January 8, 2023 Grailer allegedly copied files to her thumb drive, a subject notably omitted from his expert report.

(*See* Section I.B below.) Lieb submitted a declaration in February 2023 attesting that Grailer copied files to her thumb drive at specified times between 7:20:38 p.m. and 9:11:06 p.m. on January 8, 2023. In his November 2023 report, Lieb again opined that Grailer copied files to her thumb drive on January 8, 2023, but omitted any reference to when that alleged copying occurred. At his January 2024 deposition, Lieb testified—contrary to his declaration a year earlier—that the alleged file copying occurred *after 9:39:51 p.m.* on January 8, 2023. It cannot be Lieb's opinion *both* that all alleged file copying occurred between 7:20:38 p.m. and 9:11:06 p.m., as set forth in his declaration, *and* that all alleged file copying occurred after 9:39:51 p.m., as Lieb testified at deposition. Because Lieb's report fails to disclose his opinion on this issue, Grailer is left with Lieb's irreconcilable testimony and no means to determine which is actually Lieb's opinion.

*Third*, Lieb has not disclosed the basis for his opinion that Grailer copied files to her thumb drive at all, regardless of the time. (*See* Section I.C below.) In his report, Lieb supports this opinion with only a two-sentence paragraph setting forth a conclusory claim that "forensic analysis . . . revealed" that Grailer copied 259 files to a USB thumb drive. Lieb does not explain *what* "forensic analysis" he allegedly performed or *how* any such analysis "revealed" that 259 files were copied to a thumb drive.

*Finally*, Lieb has not disclosed the basis for his opinion that an "Office365 User Activity Log" shows that after returning her Ecolab laptop, Grailer used an "undisclosed" personal computer to access files on January 15, 2023, and to log in and open and delete other files between January 11 and 18. (*See* Section II below.) In his report, Lieb cited only the "Office365 User Activity Log" to support this opinion. He provided no analysis as to *how* that log purportedly showed what Lieb claims that it shows. It emerged during his deposition that Lieb was in no position to provide that analysis, because he failed even to use the correct log when preparing his

report. The correct log is a voluminous "audit log" that Ecolab produced in August 2023. Rather than analyze the correct log, Lieb prepared his November 2023 report using a heavily filtered, two-page excerpt from the log that omitted most of the relevant data. Lieb eventually opined about the full log's contents in his deposition and, in doing so, revealed another new opinion: that Grailer used an undisclosed computer to log in a final time to her Ecolab Microsoft 365 account no later than January *8*, 2023, when she still had access to that account through her Ecolab laptop—not during January 11–18 as Lieb states in his report. That new opinion was not included in (and is contrary to the opinion offered in) Lieb's report, and Lieb has not disclosed the basis for it. Lieb (again) testified that he has not developed a basis for the new opinion.

## ARGUMENT

To satisfy Rule 26, Lieb's report must contain "a complete statement of all opinions [Lieb] will express and the basis and reasons for them," as well as "the facts or data considered by [Lieb] in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii).  It "must be 'detailed and complete,'" "such that opposing counsel is not forced to depose [the] expert in order to avoid ambush at trial," and further "to shorten or decrease the need for expert depositions and thus to conserve resources." *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998) (quoting Fed R. Civ. P. 26, Notes of Advisory Committee on Rules—1993 Amendment)). "Expert reports must not be sketchy, vague or preliminary in nature." *Id.* "[T]hey must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Id.*

4

I.      **Lieb Has Not Disclosed the Basis for His Opinion That Grailer Copied Files to Her USB Thumb Drive on January 8, 2023.**

A.      **Lieb Withheld His Opinion About How Grailer Could Have Copied Files Without Digital Guardian Recording Her, and He Has Not Disclosed the Basis of the New Opinion He Revealed in His Deposition.**

Ecolab uses a data loss prevention tool called "Digital Guardian" to surveil its employees. (*See* Dkt. 115, Dep. of Laurence D. Lieb taken Jan. 23, 2024 ("**Lieb Dep.**") at 24:23–25:13; ███ ██████████████████████████████████████████████████████████ ████████████████████.) Ecolab provided Lieb with a report from Digital Guardian chronicling Grailer's activities on her Ecolab laptop until she returned the laptop to Ecolab. (Dkt. 113, Lieb Report ¶ 7; Dkt. 115, Lieb Dep. 24:20–22; ███████████████████████████████████ ███████.)

Digital Guardian's purpose is to record exactly the sort of file copying that Ecolab claims (and that Lieb opines) Grailer engaged in on January 8, 2023. "Digital Guardian is designed specifically to record the exfiltration of company files by employees." (Dkt. 113, Lieb Report ¶ 12; *see also* Dkt. 115, Lieb Dep. 25:14–18.) And "Ecolab employs . . . Digital Guardian . . . specifically to capture and memorialize unauthorized exfiltration of files, such as the downloading and copying of Ecolab files to external USB media." (Dkt. 113, Lieb Report ¶ 12; *see also* Dkt. 115, Lieb Dep. 25:19–23 ("Q. . . Digital Guardian is designed to make a record if files are copied to an external storage device like a USB thumb drive, right?  A. That is correct."); *id* at 308:12–14 ("[T]he Digital Guardian tool is designed to track and record when files are recorded to external USB media."); ██ ████████████████████████████████████████████████████████.)

Digital Guardian serves that purpose well. For example, when Grailer copied two files to her thumb drive on December 20, 2022 (in an instance of file copying that Ecolab does not contend was improper), Digital Guardian recorded the names of the files Grailer copied, the specific time

she copied them, the location she copied them from, the fact that she copied them to a removable USB drive, and the serial number of that USB drive. (Dkt. 115, Lieb Dep. 41:21– 51:14; Feb. 26, 2024 Decl. of Matthew Splitek in Supp. Mot. to Strike ("**Feb. 2024 Splitek Decl.**") ¶ 2 & Ex. A, Lieb Dep. Ex. 5.) ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████

Digital Guardian's final record of Grailer's activity is time-stamped 9:28 p.m. (CST) on January 8, 2023. (Dkt. 115, Lieb Dep. 40:21–23, 52:6–53:2, 53:3–55:15, 60:24–61:14, 66:4–24.) The Digital Guardian report does not show Grailer copying any files to her thumb drive on January 8, 2023, much less even one of the hundreds of files that Ecolab and Lieb accuse her of copying that day. (*See id.* at 25:24–26:8, 31:8–16, 35:14:21, 61:15–22, 63:5–7, 67:16–19, 70:4–7, 81:22– 82:1, 84:3–5, 86:18–22, 96:10–19, 97:10–16, 97:23–99:7.)

Lieb did not disclose any opinions regarding the Digital Guardian report of Grailer's activity in his expert report. He neither addressed the fact that Digital Guardian recorded none of the file copying that he opined occurred, nor opined on how Grailer could have copied the files despite the Digital Guardian report showing no such copying. He failed to do so even though his report was "based" in part on his review of Digital Guardian's report about Grailer's activities, and even though he acknowledged Digital Guardian's purpose of recording the "unauthorized

exfiltration of files, such as the downloading and copying of Ecolab files to external USB media." (Dkt. 113, Lieb Report ¶¶ 7, 12; *see also id.* ¶ 12 ("Digital Guardian is designed specifically to record the exfiltration of company files by employees.").)

In his deposition, Lieb testified that he did not address this information precisely because it is exculpatory. According to Lieb, he *would have* discussed the Digital Guardian report if it supported his opinion; it did not, so he ignored it. (*See* Dkt. 115, Lieb Dep. 31:12–16 ("[M]y analysis of the Digital Guardian report . . . did not find any evidence of . . . exfiltration of files to an external USB media or I would have referenced that in my report."); *id.* at 35:17–21 ("I analyzed that [Digital Guardian] report, obviously, to see if there was any evidence of exfiltration to [a] USB drive. I did not find any in the Digital Guardian report, otherwise, I would have reported that in my declaration."); *id.* at 67:16–19 ("I did not find any evidence of exfiltration within the Digital Guardian report, which is why I didn't reference it in my expert report."); *id.* at 70:4–7 ("I found no evidence of exfiltration in the Digital Guardian report. If I did, I would report it. I'm an independent expert."); *id.* at 81:22–82:1 ("I found no evidence of exfiltration by Grailer within the Digital Guardian report because, otherwise, I would have reported on that."); *id.* at 96:14–19 ("I found no evidence of exfiltration of files through my analysis of the Digital Guardian report so I didn't refer to any analysis because I didn't find any evidence of exfiltration as recorded by the Digital Guardian report."); *id.* at 97:10–16 ("Q. . . [I]n your report, you agree you've never disclosed that the Digital Guardian report does not record any of the exfiltration that you allege, right?  A. The question doesn't make sense because I did not find evidence of exfiltration recorded by the Digital Guardian report.").

Lieb took the same approach in the sworn declaration he submitted in support of Ecolab's motion for preliminary injunctive relief in February 2023.  (*See* Dkt. 15, Decl. of Laurence D. Lieb

dated Feb. 21, 2023 ("**1st Lieb Decl.**").) There too, Lieb never acknowledged that Digital Guardian recorded none of the file copying that Lieb claimed had occurred. To the contrary, he made it appear as if Digital Guardian *did* record file copying by Grailer. Lieb attested in his declaration that he had "forensically analyzed the Digital Guardian Report *and came to the forensic observations and opinions* set forth in [his declaration]." (Dkt. 15, 1st Lieb Decl. ¶ 15 (emphasis added).) He offered that testimony at a time when he and Ecolab had exclusive access to the exculpatory Digital Guardian report. Ecolab did not produce Digital Guardian's report to Grailer until May 3, 2023, more than a month after this Court's March 30, 2023 hearing on Ecolab's motion for preliminary injunctive relief. (*See* Dkt. 97, Tr. of Mar. 30, 2023 Mot. Hr'g; Dkt. 68-8.) Ecolab asked this Court to enter an injunction against Grailer without allowing either Grailer or the Court to know that Ecolab was sitting on a Digital Guardian report that tracked Grailer's activities on January 8, 2023, and showed her *not* copying any files to her thumb drive. (*See* Dkt. 115, Lieb Dep. 98:14–99:7 (Lieb was prepared to tell the Court at the hearing what the Digital Guardian report showed, but only "if [he] had been asked if the Digital Guardian report contained any evidence of exfiltration of files").

Lieb finally addressed the Digital Guardian report during his January 2024 deposition. There, he offered a new opinion about why Digital Guardian did not record any of Grailer's supposed misconduct.

In his deposition, Lieb testified that Digital Guardian did not record any of Grailer's alleged file copying because all such purported copying occurred after Digital Guardian's final record of Grailer's activity at 9:28 p.m. (CST) on January 8, 2023. In his expert report, Lieb had opined that Grailer connected her USB thumb drive to her laptop at exactly 9:39:51 p.m. (CST) on January 8, 2023. (Dkt. 113, Lieb Report ¶ 17.) In his deposition, Lieb testified that Grailer did not copy any

files to her thumb drive until after that alleged connection at 9:39:51 p.m.—and further, that that is why Digital Guardian made no record of Grailer copying any files on January 8. (*See* Dkt. 115, Lieb Dep. 72:4–9 ("Q. . . [T]he exfiltration that you claim Grailer engaged in, in your view, all occurred after 9:39:51 p.m. on January 8th, 2023, correct?  A. Correct. That's my opinion why it's not appearing in the Digital Guardian report."); *id.* at 292:17–21 ("[T]he Emtec [USB thumb] drive was connected to the laptop on January 28th [*sic*], 2023, at 9:39 p.m., which, in my opinion, is why that activity doesn't show up in the Digital Guardian report."); *id.* at 31:17–24 ("Q. . . [D]on't you want to know why the alleged exfiltration was not recorded in the Digital Guardian report? . . . A.  "Well, the exfiltration that I found was performed after the Digital Guardian report cuts off time-wise. So that is the explanation."); *id.* at 38:4–6 ("[T]he evidence of activities of exfiltration chronologically is after that last time entry in the Digital Guardian report."); *see also id.* at 25:24–26:8, 69:16–72:3, 72:23–73:3, & 290:8–293:14.)

Regarding this new opinion, Lieb further testified that Grailer "may not have been connected to the Internet" after the Digital Guardian report's final record at 9:28 p.m. on January 8, 2023. (Dkt. 115, Lieb Dep. 34:1–2.) Lieb opined that a lack of internet connectivity could have prevented the Digital Guardian "agent" installed on Grailer's laptop from reporting its activity logs back to Digital Guardian's server for inclusion in Digital Guardian's report. (*Id.* at 33:17–34:10.)



QB\179859.00001\88499117.1

███████████. Nonetheless, "she may not have been connected to the Internet" is the explanation Lieb gave in his deposition. (Dkt. 115, Lieb Dep. 34:1–2 ("That's my explanation.").)

Lieb's opinion that a lack of internet connectivity could have prevented Digital Guardian from including post-9:28 p.m. records in its report was a new opinion in two different respects. First, as noted, Lieb had not previously attempted to explain how Grailer could have copied files to her USB thumb drive without the Digital Guardian software recording that activity. Second, as discussed further below, Lieb's previous testimony about the timing of the alleged copying (which he previously asserted occurred at specified times between *7:20:38 p.m. and 9:11:06 p.m.* on January 8, 2023) was flatly inconsistent with this new opinion that Grailer *only* copied files to her thumb drive *after 9:28 p.m.* on January 8, 2023. (*Compare* Dkt. 15, 1st Lieb Decl. ¶¶ 24, 30–33, *with* Dkt. 115, Lieb Dep. 38:4–6, 72:4–9.) And, as discussed below, neither opinion was disclosed in his November 2023 report, which failed to specify *any* times at which Grailer allegedly copied files. (*See* Dkt. 113, Lieb Report ¶ 18 (claiming that "259 . . . files were copied by Jessica Grailer to [her] Emtec [USB thumb] Drive on January 8, 2023" but not specifying any time or times when that supposedly happened).)

Lieb has not disclosed any basis for this new opinion. He has not tried to determine why Digital Guardian recorded none of the alleged copying. (*See id.* at 38:21–39:2 ("Q. . . You didn't perform any analysis to try to determine why the Digital Guardian report did not record any of the copying that you allege, correct?  A. That's correct. Because I didn't need to.").). He cannot recall analyzing whether Grailer was in fact connected to the internet when the copying allegedly occurred—and he can only "speculate" and "[does not] know" why Digital Guardian's report did not record any of that alleged activity. (*Id.* at 36:6–38:10.) Nor has Lieb identified any basis to opine that Grailer copied files to her USB thumb drive at any particular time after 9:28 p.m. or

9:39:51 p.m. on January 8, 2023 (nor has he reconciled that new opinion with his previous testimony that any copying occurred *before* 9:28 p.m. on January 8, 2023).

B.     **Lieb Has Not Disclosed *When* He Claims That Grailer Copied Files to Her Thumb Drive.**

Lieb's report does not disclose any opinion as to when on January 8, 2023, Grailer allegedly copied files to her USB thumb drive. (*See* Dkt. 113, Lieb Report ¶ 18.) His testimony, however, offers two mutually incompatible conclusions.

On the one hand, when identifying the specific times at which Grailer allegedly copied files to her thumb drive, Lieb repeatedly identified times *earlier* than Digital Guardian's final record of Grailer's activity at 9:28 p.m. (CST) on January 8, 2023. As Lieb agreed in his deposition, every such time specified in his February 2023 declaration preceded 9:28 p.m. on January 8. (*See* Dkt. 15, 1st Lieb Decl. ¶¶ 24, 30–33 (testifying that Grailer copied files to her thumb drive at specified times between 7:20:38 p.m. and 9:11:06 p.m. (CST) on January 8); Dkt. 115, Lieb Dep. 92:2–94:13, 95:6–96:9.)[1] Lieb similarly testified in his deposition that an exhibit to his November 2023 report depicts computer activity that he considers "consistent with" file copying on January 8, 2023—and that all such activity *also* occurred before Digital Guardian's final record at 9:28 p.m. (*See* Dkt. 115, Lieb Dep. 75:18–83:1; Feb. 2024 Splitek Decl. ¶ 9 & Ex. H, Lieb Dep. Ex. 36 (Lieb Report Ex. F).)

On the other hand, Lieb testified at his deposition that Grailer's alleged file copying *all* occurred at some unidentified time *after* both 9:28 p.m. and 9:38:51 p.m. on January 8, 2023. He repeatedly testified that all such copying occurred after Digital Guardian's final record at 9:28 p.m.

---

[1] Ecolab also adopted Lieb's 7:20:38 p.m. to 9:11:06 p.m. time range in its written discovery responses. When asked to state the "date(s) and time(s) on which" Ecolab contends that Grailer misappropriated any files, Ecolab responded by "direct[ing] [Grailer] to the Declaration of Laurence D. Lieb, ECF No. 15." (*See* Dkt. 68-5, Resp. to Int. 9.)

(*See* Dkt. 115, Lieb Dep. 25:24–26:8 (testifying that Digital Guardian's report did not record Grailer copying files to her thumb drive "because it cuts off at a time before those acts occurred"); *id.* at 31:22–24 ("[T]he exfiltration that I found was performed after the Digital Guardian report cuts off time-wise."); *id.* at 38:4–6 ("[T]he evidence of activities of exfiltration chronologically is after that last time entry in the Digital Guardian report."). He also repeatedly testified that Grailer's alleged file copying all occurred after the specific time—9:39:51 p.m.—when he claims that Grailer connected her thumb drive to the laptop. (*See id.* at 72:4–8 ("Q. . . [T]he exfiltration that you claim Grailer engaged in, in your view, all occurred after 9:39:51 p.m. on January 8th, 2023, correct?  A. Correct."); *id.* at 292:17–21 ("[T]he Emtec [USB thumb] drive was connected to the laptop on January 28th [*sic*], 2023, at 9:39 p.m., which, in my opinion, is why that activity doesn't show up in the Digital Guardian report."); *id.* at 290:8–293:14 (testifying that the event timeline in which Grailer purportedly connected her thumb drive, copied files to the thumb drive, and removed the thumb drive from her laptop did not begin until 9:39 p.m. on January 8, 2023).

Lieb's self-contradictory testimony leaves Grailer and her counsel at a loss regarding what Lieb even claims. Lieb cannot simultaneously believe *both* that the file copying he alleges all occurred after 9:28 p.m. (at some time after 9:39:51 p.m.) *and* that every specific instance of that copying happened *before* 9:28 p.m..

Compounding this confusion, each of Lieb's mutually exclusive stories suffers from another glaring problem that would make each story implausible even standing on its own.

Lieb's original testimony that Grailer copied files to her thumb drive at specified times between 7:20:38 p.m. and 9:11:06 p.m. makes no sense because Lieb opines that Grailer connected her thumb drive to her laptop only later, at 9:39:51 p.m. That is the only time when Lieb claims Grailer connected her thumb drive to the laptop on January 8, 2023. (*See* Dkt. 113, Lieb Report

¶ 17; *see also* Dkt. 115, Lieb Dep. 260:6–10.) As Lieb acknowledges, Grailer could not have copied files to her thumb drive *before* connecting the thumb drive to her laptop. (*See* Dkt. 115, Lieb Dep. 259:21–260:5 ("Q. . . [Y]ou don't claim, of course, that [Grailer] somehow exfiltrated files to her thumb drive before connecting it?  A. If you're asking me if files can be copied to a USB drive that is not connected to a laptop, is that what you're asking?  Q. That is, yes.  A. That's impossible."). Lieb's testimony about alleged file copying *before* 9:39:51 p.m. thus rests on an admitted impossibility, even before getting to its inconsistency with Lieb's other testimony—that such file copying occurred only *after* 9:39:51 p.m.

Further complicating Grailer's ability to determine Lieb's actual opinion on this subject is Lieb's separate testimony that Grailer not only connected—but also removed—her thumb drive from her laptop at the same exact second. Lieb testified in his deposition that Grailer last *removed* her thumb drive from her laptop at 9:39:51 p.m. on January 8, 2023—the same time when he claims she *connected* the thumb drive. (*See* Dkt. 115, Lieb Dep. 254:15–19; 284:6–285:13; *see also* Feb. 2024 Splitek Decl. ¶ 7 & Ex. F, Lieb Dep. Ex. 26.) That is, Lieb claims that Grailer *both* connected her thumb drive to her laptop *and* removed that thumb drive from the laptop at the same time of 9:39:51 p.m. on January 8, 2023—and also copied hundreds of files to the thumb drive in that same second. (*See id.*; *see also id.* at 290:8–293:14).

Lieb's various claims do not cohere. To copy files to a USB thumb drive, a person would need to connect that thumb drive at a specific time, take some action to initiate the copying process, allow for that process to finish (the timing for which would depend on variables such as the computer's processing speed, the size of the files, what other functions the computer was performing at the same time, etc.), and finally to remove the thumb drive once the copying

13

concluded. (*See* Dkt. 290:8–21.) Lieb's multiple inconsistent opinions, however, repeatedly defy any logical chronology:

- Lieb opines that all copying occurred *before* 9:28 p.m. but also that all copying occurred *after* 9:28 p.m.;

- Lieb opines that all copying occurred *before* the thumb drive was inserted at 9:39:51 p.m. but also that all copying occurred *at the exact second* the thumb drive was inserted at 9:39:51 p.m.; and

- Lieb opines that Grailer copied hundreds of files *over a nearly two-hour period* and also that Grailer manually inserted the thumb drive, copied hundreds of files, and manually removed the thumb drive, *all in the same exact second*.

By failing to disclose in his report his opinion regarding when Grailer supposedly copied files on January 8, 2023, Lieb has impaired Grailer's ability to test and to falsify the vague accusation that is being made against her. Claims that files were copied to a thumb drive at specific times can easily be tested against evidence. For example, Digital Guardian recorded the precise time Grailer copied specific files to her thumb drive on December 20, 2022. (*See* pp. 5–6 above.) Using Digital Guardian's time stamps along with other time stamps available in the image of Grailer's laptop, Grailer's expert built an evidence-based timeline that not only validated Digital Guardian's records, but also showed exactly when Grailer connected her thumb drive to her laptop on December 20, when she put her laptop into sleep mode after copying files to the thumb drive, and when she resumed the laptop from sleep mode with the thumb drive already removed. (*See* Dkt. 114, Expert Report of Bruce W. Pixley ("**Pixley Report**") ¶ 84.) But that kind of targeted testing is not possible when an expert such as Lieb refuses to specify the times at which he claims that misconduct occurred and instead offers multiple inconsistent opinions without explanation or clarification. (*See* Dkt. 114, Pixley Report ¶¶ 18–22.)

Lieb's opacity about when he claims that Grailer copied files to her thumb drive is not plausibly accidental. In his February 2023 declaration, Lieb identified specific times when the

alleged copying occurred . (*See* Dkt. 15, 1st Lieb Decl. ¶¶ 24, 30–33.) Grailer called attention to the chronological problem those times created—i.e.*,* Lieb was claiming that Grailer copied files to her thumb drive *before* allegedly connecting the thumb drive to her laptop—when she opposed Ecolab's motion for preliminary injunctive relief in March 2023. (*See* Dkt. 33, Resp. to Pls.' PFF ¶ 42, pp. 29–31.) Lieb had over half a year to clarify his theory and identify his opinion on the issue. Instead, in his report, Lieb dodged the chronology problem by refusing to disclose his opinion about when Grailer allegedly copied any files. (*See* Dkt. 113, Lieb Report.) Then, instead of furnishing that information in his deposition, he offered the incoherent testimony discussed above. And he tried to avoid doing even that. For example, at one point in his deposition, Lieb spent four transcript pages refusing to answer the simple question of whether the file copying he alleges occurred *before* or *after* 9:39:51 p.m. on January 8, 2023:

> A.   It is my opinion that Jessica Grailer connected this Emtec [USB thumb] drive to her former work laptop on the evening of January 8th, 2023, and her iPhone 6S and used one or both of the devices to exfiltrate the files that are described in my expert report.

> Q.   And then she did that after 9:39:51 p.m., correct?

> A.   It's my opinion that Jessica Grailer used this Emtec drive and/or the iPhone 6S which were connected to the laptop on the evening of January 8th, 2023, to exfiltrate the files addressed in my report.

> Q.   Not my question. So the timestamp there, 9:39:51 p.m. on January 8th, 2023, do you see that?

> A.   I do.

> Q.   Did the exfiltration that you allege occur before or after that specific time?

> A.   I believe the evidence shows that Jessica Grailer exfiltrated the files that I described in my expert report on the evening of January 8th, 2023, using the Emtec USB drive and/or the iPhone 6S that was connected to her laptop that evening.

Q.      So if you look at Exhibit 26, the only timestamp that is given is 9:39:51 p.m. on January 8th, 2023, right?

A.      Yes.

Q.      Do you understand so far?

A.      I see those timestamps.

Q.      And you allege that Grailer exfiltrated files to her USB thumb drive, right?

A.      Or the iPhone 6S, as the evidence shows that both devices were connected to her laptop on the evening of January 8th concurrent and consistent with the evidence of the file exfiltration.

Q.      So my question to you is: Do you claim that that file exfiltration happened before or after you say that Grailer connected her USB thumb drive to the computer at 9:39:51 on January 8th, 2023?

A.      It is my opinion that Jessica Grailer connected the Emtec drive and her iPhone 6S to her Ecolab laptop on January 8th, 2023, and used one or both of those devices to exfiltrate the files described in my expert report.

Q.      Okay, I understand that. I guess I have a different question, though, which is: Do you claim that the exfiltration you just referred to happened before or after 9:39:51 p.m. on January 8th, 2023?

A.      So I'm reading paragraph 18, page 5.

Q.      Of what?

A.      Of Exhibit 2 [*Lieb's expert report, which is now on file at Dkt. 113*].
        [As read]:  Forensic analysis. The Ecolab laptop revealed Jessica Grailer accessed and exfiltrated multiple files on January 2023 -- January 8th, 2023, including the 259 files described in Exhibit E based on -- should be my forensic analysis.
        [As read]:  It is my opinion that the 259 files were copied by Jessica Grailer to the Emtec drive on January 8th, 2023.
        I found no evidence to change my opinion.

Q.      All right. So you just directed me to paragraph 18 of your report in Exhibit 2, right?

A.      Yes.

Q.      Okay. And you talked about the exfiltration that you say happened in that paragraph, right?

16

A.      Yes.

Q.      So I have a related question for you. The exfiltration that you're talking about in paragraph 18 of your report, is it your opinion that that exfiltration happened before or after 9:39:51 p.m. on January 8th, 2023?

A.      I don't know. I'd have to look at the access dates and timestamps on the files that I described as her being exfiltrated.

Q.      So you don't know?

A.      I do know. I know that the files that were -- that identified as being exfiltrated all have date and timestamps that are consistent with my opinion that Jessica Grailer connected an Emtec USB drive to her former work laptop on the evening of January 8th, 2023, and exfiltrated the files that I described.

Q.      How could Grailer have exfiltrated files to her thumb drive before connecting her thumb drive?

A.      I don't see anywhere in my report where I claimed that. I am not claiming that.

Q.      Okay. So you don't claim that she exfiltrated files before you say she connected her USB thumb drive at 9:39:51 on January 8th, 2023, correct?

A.      It is any [*sic*] opinion that the evidence shows that the Emtec USB drive was connected to Jessica Grailer's Ecolab laptop on the evening of January 28 [*sic*], 2023, which is consistent with the dates and timestamps that I see on the files that I describe as her having exfiltrated.

(Dkt. 115, Lieb Dep. 255:12–259:20.)[2]

_____

[2] During his deposition, Lieb altered the opinion disclosed in his report—that Grailer copied files to a USB thumb drive—by testifying that he believes Grailer copied hundreds of files to her USB thumb drive *or* to an iPhone 6S. Lieb testified that Grailer connected that iPhone 6S to her laptop at 9:39:51 p.m. on January 8, 2023—the exact second when he claims Grailer also connected her USB thumb drive. (*See* Dkt. 115, Lieb Dep. 250:9–253:5.) Lieb's deposition testimony about possible file copying to an iPhone contradicts the opinion disclosed in his report, where Lieb specifically opined that "Jessica Grailer Exfiltrated Multiple Ecolab Files from Ecolab On January 8, 2023 Using A Emtec USB Drive." (Dkt. 113, Lieb Report at p. 4 (heading at bottom of page); *see also id.* ¶¶ 17–19.) Nowhere in his report did Lieb disclose any opinion about purported file copying to a telephone. (*See* Dkt. 113, Lieb Report.)

### C.   Lieb Has Not Disclosed the Basis for His Opinion That Grailer Copied Files to Her Thumb Drive at Any Time.

Lieb's report does not satisfy Rule 26's disclosure obligations in another regard: It fails to provide the basis and reasons for his opinion that Grailer copied files to her thumb drive at *any* time.

In his report, Lieb opines that Grailer copied 259 files to her USB thumb drive on January 8, 2023. He lists the file names in Exhibit E to his report. (*See* Dkt. 113, Lieb Report ¶ 18; Dkt. 115, Lieb Dep. 299:2–4; Feb. 2024 Splitek Decl. ¶ 8 & Ex. G, Lieb Dep. Ex. 35 [Lieb Report Ex. E].) No information other than file names is provided in that exhibit. (*See* Feb. 2024 Splitek Decl. Ex. G, Lieb Dep. Ex. 35 [Lieb Report Ex. E].)

The entirety of Lieb's analysis relating to this file copying opinion consists of one paragraph with one footnote. Quoted in full, that analysis reads:

> Forensic analysis of the Ecolab Laptop revealed Jessica Grailer accessed and exfiltrated multiple files on January 8, 2023, including the 259 files described in **Exhibit E**[3]. Based on a forensic analysis, it is my opinion that the 259 exfiltrated files were copied by Jessica Grailer to the Emtec Drive on January 8, 2023.
>
> . . .
>
> [3] LT001-JESSICA-GRAILER.E01 - Partition 4 (236.54 GB)_decrypted.img - Entire Disk (Microsoft NTFS, 236.54 GB) OSDisk\$Extend\$UsnJrnl:$J

(Dkt. 113, Lieb Report ¶ 18 (bolded text in original).)

Lieb does not provide the basis or the reasons for his opinion in this paragraph. He writes that "forensic analysis" of Grailer's laptop "revealed" his conclusion—but does not say *what* "forensic analysis" he performed or *how* it allegedly "revealed" that 259 files were copied to a USB thumb drive. Nor does the operating system file cited in Lieb's footnote—$UsnJrnl:$J— contain that explanation. In his deposition, Lieb testified that, although he "[did not] know" what his own footnote cites to, "[i]t could be the entire [Update Sequence Number (USN) change]

journal" in Grailer's Ecolab laptop. (*See* Dkt. 115, Lieb Dep. 285:24–286:18.) In fact, it is. And the USN change journal in Grailer's laptop does nothing to explain how Lieb concluded that Grailer copied 259 files to her thumb drive.

A Windows computer's USN change journal contains a huge volume of entries regarding recent changes to files and directories. *See* Microsoft, https://learn.microsoft.com/en-us/windows-server/administration/windows-commands/fsutil-usn ("The USN change journal provides a persistent log of all changes made to files on the volume. As files, directories, and other NTFS [*i.e.*, Microsoft's "New Technology File System"] objects are added, deleted, and modified, NTFS enters records into the USN change journal, one for each volume on the computer." (last visited Feb. 26, 2024)).[3] Lieb does not say in his report which specific entries in the USN change journal he claims are relevant, let alone how any of them purportedly reflect file copying. Nor is that information self-evident. To begin, Lieb did not identify any specific USN entry supporting his opinion, and Grailer's expert could not find *any* USN change journal entries relating to more than a quarter of the 259 files that Lieb claims Grailer copied to her thumb drive on January 8, 2023. (*See* Dkt. 114, Pixley Report ¶ 142.) Additionally, the journal entries Grailer's expert was able to identify generally pre-date the 9:39:51 p.m. time at which Lieb claims that Grailer connected her thumb drive to the laptop. (*Id.* ¶ 143.)[4] Moreover, it is unclear how, if at all, Lieb believes any

---

[3] When Grailer's expert accessed the USN change journal in the image of Grailer's laptop, he identified a total of 360,086 entries bearing timestamps from 7:20:27 p.m. (CST) on January 8, 2023 to 4:37:50 p.m. (CST) on February 8, 2023. (*See* Dkt. 114, Pixley Report ¶ 139; *see also* Dkt. 115, Lieb Dep. 289:17–24 (Lieb could not even approximate the volume of entries in the USN change journal).)

[4] In his February 2023 declaration, Lieb provided time stamps for at least some USN change journal entries that he cited. (*See* Dkt. 13-8, 1st Lieb Decl. Ex. E.) Every one of those time stamps also preceded the 9:39:51 p.m. time at which Lieb claims that Grailer connected her thumb drive to the laptop. The time stamps provided in Exhibit E to Lieb's February 2023 declaration were all at 7:20:38 p.m., 7:20:39 p.m., or 8:48:02 p.m. on January 8, 2023. (*See id.*) Lieb, however, stripped those time stamps from the version of Exhibit E attached to his November 2023 report. (*See* Feb.

USN change journal entries constitute evidence of copying files to a USB thumb drive. Lieb agrees that "[t]he Windows . . . operating system is *not* designed to record directly in a discrete location files being copied to an external USB drive"—in contrast to Digital Guardian, which, as discussed in Section I.A above, "*is* designed to track and record when files are recorded to external USB media." (Dkt. 115, Lieb Dep. 308:12–17 (emphasis added); *see also* Dkt. 114, Pixley Report ¶ 138 ("[U]nlike endpoint programs such as Digital Guardian, the USN change journal is not intended to track activities such as user copying.").) But Lieb says nothing in his report to explain which journal entries he nevertheless claims are relevant, or why. He only cites the entirety of an operating system journal with 360,000+ entries and claims, with no analysis, that *something* in that journal indicates file copying. (*See* Dkt. 113, Lieb Report ¶ 18 & n.3.)

Lieb's failure to explain the purported basis and reasons for his "file copying" opinion again undermines Grailer's ability to understand that opinion—the purpose of Rule 26's disclosure requirements. By providing nothing more than a cryptic reference to "forensic analysis" and a footnote citing the entire USN change journal in Grailer's laptop, Lieb has failed to provide the "basis and reasons" for his opinion, as required by Rule 26.

## II.     Lieb Failed To Disclose the Basis for Either His Original Opinion About Grailer's Alleged Activities After Returning Her Laptop or for the New Opinion Revealed in His Deposition.

Finally, Lieb has failed to disclose the basis and reasons for his opinion that an "Office365 User Activity Log" shows that, after returning her Ecolab laptop, Grailer used an "undisclosed" personal computer to "access[]" files on January 15, 2023, and to "log[] in and open[] and delete[]" other files on different days between January 11 and 18. (*See* Dkt. 113, Lieb Report ¶¶ 22–23, 30.)

---

2024 Splitek Decl. Ex. G, Lieb Dep. Ex. 35 [Lieb Report Ex. E].) This is another example of Lieb working in his report to obscure rather than clarify his opinion regarding when Grailer allegedly copied files on January 8, as discussed in Section I.B above.

In his report, Lieb stated that these opinions were based solely on a "Office365 User Activity Log." (*Id.*) But he neither described the contents of that "Office365 User Activity Log" nor explained how they showed Grailer "accessing" files or "logg[ing] in and open[ing] and delet[ing] files." (*Id.*) Lieb wrote that he had attached the "Office365 User Activity Log" as an exhibit to his report (*id.* ¶ 22), but in fact he failed to do even that, as he acknowledged in his deposition. (*See* Dkt. 115, Lieb Dep. 110:3–111:7.) So in his report, Lieb disclosed nothing beyond a conclusory opinion that a log he had intended but failed to attach to his report showed, for reasons Lieb did not explain, that Grailer "accessed" files on January 15, 2023, and also "logged in and opened and deleted files" between January 11 and 18. (Dkt. 113, Lieb Report ¶¶ 22–23, 30.)

Worse, it turns out Lieb was not even looking at the right document when he opined in his report on what the "Office365 User Activity Log" shows. Instead of considering the actual log—a voluminous "audit log" that Ecolab produced only after Grailer moved to compel its production—Lieb relied exclusively on a two-page spreadsheet that Ecolab gave him in February 2023, shortly after engaging him. And he relied on that spreadsheet despite having no idea where its data had come from.

This was not the first time Lieb had done so. Rather, the opinion in Lieb's November 2023 report echoed the opinion in his February 2023 declaration, where Lieb attested that "[f]orensic analysis revealed Jessica Grailer accessing her Ecolab OneDrive account on January 15, 2023 . . . and then exfiltrating [twenty] files." (Dkt. 15, 1st Lieb Decl. ¶ 17.)

Neither Lieb nor Ecolab provided any documentation supporting Lieb's assertion at the time of his February 2023 declaration. Ecolab provided that documentation only in May 2023, when it produced an Excel spreadsheet, titled "JGrailer.xlsx," containing data so scant it fit on two printed pages. (*See* Dkt. 68, ¶¶ 13–14; Dkt. 68-9; *see also* Dkt. 115, Lieb Dep. 103:2–8; Feb. 2024

Splitek Decl. ¶ 3 & Ex. B, Lieb Dep. Ex. 9.)[5] Lieb confirmed in his deposition that he relied on

that two-page spreadsheet to testify in February 2023. (*See* Dkt. 115, Lieb Dep. 88:2–90:11, 103:2–

8, 103:17–104:6.) The spreadsheet referenced twenty "FilePreviewed" events on January 15, 2023,

all of which originated from a Microsoft-owned IP address. (*See* Feb. 2024 Splitek Decl. Ex. B,

Lieb Dep. Ex. 9 (the rows showing "FilePreviewed" in the "event.action" column); Dkt. 115, Lieb

Dep. 122:17–125:22.) Microsoft explains in online materials that such "FilePreviewed" events

"typically occur in high volumes based on a single activity, such as viewing an image gallery,"

and that "FilePreviewed" events are distinguishable from "FileAccessed," "FileCopied," or

"FileDownloaded" events, in which files are accessed, copied, or downloaded. *See* Microsoft,

Audit log activities, https://learn.microsoft.com/en-us/purview/audit-log-activities (last visited

Feb. 26, 2024); *see also* Dkt. 115, Lieb Dep. 181:21–182:11 & Feb. 2024 Splitek Decl. ¶ 6 & Ex.

E, Lieb Dep. Ex. 13 (Lieb was not familiar with Microsoft's materials).) Nonetheless, based solely

on the two-page spreadsheet's reference to files being "Previewed" from a Microsoft IP address,

Lieb testified that "[f]orensic analysis revealed Jessica Grailer . . . exfiltrating the files." (Dkt. 15,

1st Lieb Decl. ¶ 15; *see* Dkt. 115, Lieb Dep. 122:17–125:22.)

In his deposition, Lieb testified that, although he relied on the two-page spreadsheet to

testify against Grailer in February 2023, he did not know what the spreadsheet *was* when he relied

on it. He "assumed" at the time—incorrectly—that the spreadsheet had come "from Digital

Guardian." (Dkt. 115, Lieb Dep. 90:19–91:13.)[6] Only later did he "come to find out" that it

---

[5] Dkt. 68-9 and Lieb Dep. Ex. 9 are both copies of the same underlying spreadsheet.

[6] Lieb's failure to understand the spreadsheet's provenance apparently explains his incorrect testimony, also given in February 2023, that Digital Guardian's report covered "all interactions . . . . Jessica Grailer performed regarding Ecolab files during the period November 14, 2022 through January *18*, 2023 inclusive." (Dkt. 15, 1st Lieb Decl. ¶ 15 (emphasis added).) As discussed in Section I.A above, Digital Guardian's report recorded Grailer's activities through January *8*, 2023, not January 18. But the two-page "JGrailer.xlsx" spreadsheet, which Lieb admits he mistakenly

"actually is not a Digital Guardian report." (*Id.* at 103:9–12.) Still, despite not knowing what it was, Lieb relied on the spreadsheet to make accusations against Grailer in sworn testimony.

As Lieb admitted during his deposition, he also did not understand that the two-page spreadsheet was an incomplete extraction from a Microsoft audit log that Ecolab had not provided to him. (*See* Dkt. 115, Lieb Dep. 114:9–13 (Lieb never felt he was missing relevant information during the time he had only the two-page spreadsheet).) Grailer's expert could see that, however, so Grailer pushed to obtain the audit log Ecolab was withholding.

For months, Ecolab wrongly denied it was withholding any audit log. In June 2023, it incorrectly claimed it had already included all available audit logs in its prior productions. (*See* Dkt. 68-4, Resp. to RFPs 16, 25.) Then it doubled down when responding to a deficiency letter—claiming, again incorrectly, that it "ha[d] produced all responsive documents" when responding to Grailer's request for audit logs. (Dkt. 80-5, ¶ F.)

Ecolab finally produced the missing audit log in August 2023, after Grailer moved to compel its production. (Grailer's motion to compel was filed at Dkt. 65.) An unformatted copy of the log is in the record as the 104-page document filed at Dkt. 74-1. Formatted copies of select rows from the log (not the whole log) are also on file at Dkts. 80-2 and 80-3. As shown there, the audit log Ecolab produced in August 2023 contained the six columns included in the two-page spreadsheet that Ecolab gave Lieb in February 2023, plus over 100 more. (*Compare* Feb. 2024 Splitek Decl. Ex. B, Lieb Dep. Ex. 9 *with* Dkts. 80-2 & 80-3; ███████████████████

████████████████████████████████████████████████████████████

███ ) Further, it included log entries from January 8–10, 2023. (*See, e.g.*, Dkt. 80-3 (showing log

---

believed was another Digital Guardian report, covered events through January 18. (*See* Feb. 2024 Splitek Decl. Ex. B, Lieb Dep. Ex. 9; Dkt. 115, Lieb Dep. 88:2–91:11.)

entries from January 8, 2023).) By contrast, the two-page spreadsheet Lieb relied upon contained no data from before January 11, 2023. (*See* Feb. 2024 Splitek Decl. Ex. B, Lieb Ex. 9.)

Despite Ecolab's production of the full audit log in August 2023, Lieb *still* relied on the earlier, incomplete spreadsheet when preparing his November 2023 report. (*See* Dkt. 115, Lieb Dep. 108:8–112:2; *see also* Feb. 2024 Splitek Decl. Ex. B, Lieb Dep. Ex. 9; Dkt. 113, Lieb Report ¶ 22.) Lieb confirmed that the "Office365 User Activity Log" referenced in his report was the same two-page spreadsheet he had relied on in February 2023, not the full audit log later produced by Ecolab. (*See* Dkt. 115, Lieb Dep. 111:5–112:2.)

Lieb finally addressed the full audit log in his deposition. In doing so, he was forced to concede that at least one of his opinions was mistaken. In opining that Grailer "opened and deleted files on multiple dates" between January 11 and 18, 2023, Lieb relied on entries in the two-page spreadsheet that referenced "HardDelete" events originating from a variety of IP addresses. (*See* Dkt. 113, Lieb Report ¶¶ 22, 30; Dkt. 115, Lieb Dep. 125:23–128:1; Feb. 2024 Splitek Decl. Ex. B, Lieb Dep. Ex. 9.) Even though the spreadsheet's "file.name" column was blank for all those entries (*see* Feb. 2024 Splitek Decl. Ex. B, Lieb Dep. Ex. 9), Lieb opined that the entries showed "files" being opened and deleted. The full audit log, however, demonstrated that the entries in fact concerned Outlook calendar appointments, all belonging to Ecolab employees other than Grailer, with appointment names such as "Focus time" or "Private Appointment." (Dkt. 115, Lieb Dep. 115:19–117:7, 117:23–118:5, 125:23–128:1, 179:9–180:17; Feb. 2024 Splitek Decl. ¶ 5 & Ex. D, Lieb Dep. Ex. 12.) Lieb agreed in his deposition that he had been mistaken to opine that any "files" were involved—and that such mistake stemmed from his reliance on the incomplete two-page spreadsheet he had received from Ecolab. (Dkt. 115, Lieb Dep. 125:23–128:1.)

Although the full audit log was available months before Lieb issued his report, Lieb did not address that log in his report. Instead, he addressed it only after being confronted with entries in the full audit log showing that Grailer logged into her Microsoft 365 account and accessed files numerous times on January 8, 2023—but that she never logged in or "accessed" any files *after* that day. (*See* Dkt. 115, Lieb Dep. 133:4–135:22, 148:19–149:1; Feb. 2024 Splitek Decl. ¶ 4 & Ex. C, Lieb Dep. Ex. 11 (the "FileAccessed" and "UserLoggedIn" events in the "event.action" column).)[7] Based on the full audit log, Lieb was forced to agree that "if [Grailer] was not logged in she would not have been able to interact with" Ecolab files at all—thus acknowledging that the opinion disclosed in his report regarding activity after January 8 (which relied on the incomplete log) did not have a basis in fact. (Dkt. 115, Lieb Dep. 139:1–2; *id.* at 140:13–15 ("obviously, she had to have been logged in to her account . . . to perform the activities"); *see also id.* at 149:2–18 (Lieb has no opinion about the difference between the "FileAccessed" events recorded while Grailer was working on January 8 and the "FilePreviewed" events that Lieb claims demonstrate file access on January 15).) But Lieb promptly pivoted to providing a new opinion—one not disclosed in his report—regarding the post-January 8 activity that his report claimed was grounded in the incomplete, two-page log.

Lieb testified he still maintains that Grailer accessed Ecolab files after January 8, but that his "current opinion" regarding that activity is tied to an entirely new opinion: that Grailer must have used an "undisclosed" computer to log into her Microsoft 365 account no later than January *8*, that she then "may have stayed logged in" for at least one continuous week, and that only then did she use the "undisclosed" computer to access files on January 15. (*See* Dkt. 115, Lieb Dep.

---

[7] The January 8 entries had not been included in the two-page spreadsheet Lieb relied upon, because that spreadsheet contained no data from before January 11, 2023. (*See* Feb. 2024 Splitek Decl. Ex. B, Lieb Dep. Ex. 9.)

134:21–135:22.) "That," Lieb testified, "would be a reasonable explanation." (*Id.* at 135:6; *see also id.* at 139:24–140:16 (testifying that although he felt he was being asked "to speculate," it also "could be that [Grailer was] using this undisclosed computer and logged in January 1st or late December and just stayed logged in").)

This opinion was not included in Lieb's report. Although Lieb referenced an "Undisclosed Computer" in his report, he opined that Grailer used that computer to log in *after* January 8. (*See* Dkt. 113, Lieb Report ¶ 30 ("[T]he Ecolab OneDrive Log shows that Jessica Grailer successfully logged in . . . on multiple dates after . . . January 8, 2023."); *see also id.* ¶¶ 22–23, 26.) He said nothing about Grailer allegedly logging into her account *on January 8 or earlier*, when she still had access to that account through her Ecolab laptop. That theory emerged only during Lieb's deposition, after he was confronted with the full audit log and forced to abandon the opinion he provided in his report while relying on the incomplete audit log.

Lieb has not disclosed any basis for his new opinion that Grailer used an undisclosed computer to log in (and stay logged in) to her Microsoft 365 account on January 8 or earlier. He does not purport to have found any record, from any day, showing an "undisclosed" computer logging into Grailer's account or interacting with Ecolab files. He testified that any device Grailer could have used to access her account would have to have been approved in advance by Ecolab— but that Ecolab told him it had no record of which devices it had approved, nor which devices accessed its systems on or around January 15, 2023. (*See* Dkt. 115, Lieb Dep. 185:19–189:1.) Nor did Lieb otherwise "find any reference to another computing device" used by Grailer. (*Id.* at 187:22–188:6.) ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

26

███████████████████████████

███████████████████████████

█████████ The full audit log in this case identifies the computer that Grailer used to log in throughout January 8, 2023—but every time, it was her Ecolab laptop, not any "undisclosed computer." (*See* Dkt. 114, Pixley Report ¶ 221.) The audit log also recorded the computer (always the same Ecolab laptop) and Windows operating system that Grailer used to access files and to perform other operations on January 8, 2023. (*See* Lieb Dep. 154:20–155:21, 157:7–21; Feb. 2024 Splitek Decl. Ex. C, Lieb Dep. Ex. 11, Columns GP & GT.) By contrast, it did not record *any* device or operating system being used in connection with the "HardDelete" or "FilePreviewed" events that Lieb now opines can be attributed to Grailer. (Dkt. 115, Lieb Dep. 178:4–13; Feb. 2024 Splitek Decl. Ex. D, Lieb Dep. Ex. 12, Columns GP & GT).) If Lieb has any basis for claiming that Grailer used a computer that Lieb and Ecolab somehow cannot identify to log in to her Microsoft 365 account on or before January 8, 2023, he has not explained what that basis is—not in his report or his deposition.

## III.    **The Court Should Strike Lieb's Expert Report Under Rule 37(c)(1).**

Lieb's report fails to satisfy Rule 26(a)(2). Even taking his deposition into account, Lieb has not disclosed the information required by Rule 26(a)(2). This is clearest when it comes to the question of precisely *when* on January 8, 2023, Lieb claims that Grailer copied files to her thumb drive. As detailed in Section I.B above, Lieb still has no answer (or has too many, irreconcilable, answers) to that question today. In addition, Lieb has not disclosed any basis for his opinion—which he said nothing about until his deposition—that a possible internet connectivity issue after 9:28 p.m. on January 8, 2023 could explain why Digital Guardian did not record any of the file copying that Ecolab and Lieb claim occurred. (*See* Section I.A above.) He also has not explained

the "how" or "why" of his conclusory opinion that unspecified "forensic analysis" and equally unspecified records in the USN change journal in Grailer's laptop show that files were copied to a USB thumb drive at times Lieb never identifies. (*See* Section I.C above.) Nor has he shared any basis for his opinion—which he again disclosed only in his deposition—that Grailer used a computer Lieb can find no record of to log in to her Ecolab Microsoft 365 account no later than January 8, 2023, when she still had access to that account and the files therein through her Ecolab laptop. (*See* Section II above.)

These Rule 26(a)(2) violations mean Ecolab cannot use Lieb as a witness unless it shows that the violations were substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."). Under Rule 37(1), "the sanction of exclusion is *automatic and mandatory* unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado*, 150 F.3d at 742 (emphasis added). This Court warned the parties of that sanction in its Preliminary Pretrial Conference Order. There, the Court advised that failure to comply with Rule 26(a)(2)(B)'s requirements "could result in the court striking the testimony of a party's experts pursuant to Rule 37." (Dkt. 77, ¶ 2.)

Ecolab cannot show that the omissions from Lieb's report were "substantially justified." Fed. R. Civ. P. 37(c)(1). Those omissions reflect deliberate choices by Lieb or Ecolab. Lieb knowingly declined to address the contents of Digital Guardian's report in his own report—and (as he admits) did so *because* Digital Guardian recorded no wrongdoing by Grailer. (*See* p. 7 above.) He also omitted from his report every reference to the specific times at which he claims that Grailer copied files to her thumb drive, even though he had included that information in his

February 2023 declaration. (*See* pp. 10–11 & p. 19 n.4 above.) He further made the decision to support his file copying claim with a two-sentence paragraph that vaguely refers to "forensic analysis" "revealing" that 259 files were copied to a USB thumb drive, without explaining what that "forensic analysis" was or how it "revealed" anything to Lieb. (*See* Section I.C above.) And his failure to consider or opine about the full audit log in his November 2023 report cannot be excused, as the log was indisputably available to Ecolab—and so to Lieb—no later than August 2023, when Ecolab produced it to Grailer. (*See* Section II above.)

Ecolab also cannot show that the violations are harmless. "In exercising its broad discretion in determining whether a violation of Rule 26(a) is harmless, a district court considers four factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Welton Enterprises, Inc. v. Cincinnati Ins. Co.*, No. 13-cv-227-wmc, 2015 WL 5567983, at *5 (W.D. Wis. Sept. 22, 2015) (citing *David v. Caterpillar,* 324 F.3d 857, 857 (7th Cir.2008)). Ecolab carries the burden of showing harmlessness; it is not Grailer's burden to show lack of harm. *See Salgado*, 150 F.3d at 742 (the "sanctioned party" must "show that its violation of Rule 26(a) was either justified or harmless"); *Fujitsu Ltd. v. Netgear, Inc.*, No. 0-CV-710-BBC, 2009 WL 2341810, at *1–2 (W.D. Wis. July 29, 2009) ("Under Rule 37(a)(1) it is plaintiffs' burden, as the sanctioned parties, to show that their violation was either justified or harmless.") Ecolab cannot carry that burden because all four factors weigh against it:

- *Prejudice or surprise to Grailer*: Lieb and Ecolab have prejudiced Grailer's ability to prepare a defense, forcing her to defend against vague, shifting, and often contradictory accusations. For example, due to the inconsistencies and omissions in Lieb's declaration, report, and deposition, Grailer *still* does not know what (or, more properly, which) position Lieb and Ecolab take on the question of *when* they claim she copied files to her thumb drive on January 8, 2023. Do they accuse her of copying files to the

thumb drive between 7:20:38 p.m. and 9:11:06 p.m. on January 8, as Lieb testified in February 2023? (And if so, *how* can they accuse of her doing that, given that Lieb claims she did not connect the thumb drive to her laptop until 9:39:51 p.m. on January 8?) Or do they accuse her of copying files to the thumb drive sometime after 9:39:51 p.m. on January 8, as Lieb testified in his deposition? (And if that is the accusation, at what specific times after 9:39:51 p.m. do they accuse her of copying files? And do they accuse her of doing so given that Lieb claims she both connected *and removed* her thumb drive at 9:39:51 p.m.?)   *Cf. Lauer v. NIC Industries, Inc.*, No. 17-cv-655-wmc, 2018 WL 2271169, at *4 (W.D. Wis. May 17, 2018) (Rule 26(a)(2) and this Court's preliminary pretrial conference orders "are designed to prevent" "the sort of uncertainty—which could also be characterized as sandbagging"— that can force an opposing party "to shoot at a moving target"). Lieb's failure to properly disclose his opinions and the basis for them prevents Grailer from preparing her defense, including by having her expert evaluate and rebut Lieb's opinions.

- *Grailer's ability to cure*: Grailer is unable to cure Lieb's violations of Rule 26—Lieb is the only person capable of providing the required opinions and information and he has not done so. Grailer was unable to cure the prejudice by deposing Lieb. Instead, Lieb's deposition—and the new and contradictory opinions he offered there—only magnified the problem. Lieb's opinions and the bases of his newly-disclosed opinions still remain unclear even though his deposition is complete.

- *Likelihood of disruption to the trial*: Lieb's refusal to clarify his opinions, let alone the reasons and bases for them, creates an inherent risk of "ambush at trial." *Salgado*, 150 F.3d at 741 n.6. Lieb's nondisclosures would prejudice Grailer at a trial just as they now prejudice her as she prepares for summary judgment.

- *Bad faith or willfulness*: There is ample evidence that Lieb's nondisclosures were willful. Willfulness is shown by Lieb's decision, in his November report, to delete every reference he had included in his February 2023 declaration to specific times at which he claimed that Grailer copied files to her thumb drive. (*See* pp. 10–11 & p. 19 n.4 above.) No purpose was served by removing that information except to obscure Lieb's opinions. Willfulness is also demonstrated by Lieb's willingness, in sworn testimony, to take mutually exclusive positions about the times when he claims that Grailer copied files. Lieb cannot possibly believe *both* that all the file copying he alleges happened after 9:39:51 p.m. on January 8 *and* that every specific instance of that copying happened before that same time. Yet he has testified that he holds both these incompatible opinions. (*See* Section I.B above.) Further, Lieb testified that he intentionally withheld his analysis of the Digital Guardian report precisely because his opinions could not be reconciled with the facts in that report. (*See* p. 7 above.) And he chose to continue relying on a severely filtered version of the Microsoft 365 audit log, rather than to reassess his (admittedly erroneous) opinions after Grailer successfully compelled production of the full log. (*See* Section II above.)

30

The Court thus must strike Lieb's expert report and preclude Ecolab from using Lieb or his report in this case. Lieb and Ecolab violated Rule 26(a)(2) without justification and to Grailer's prejudice. *Cf. Leifker v. Leifker Grain, LLC*, No. 15-cv-37-jdp, 2016 WL 4487808, at *3 (W.D. Wis. Aug. 25, 2016) (precluding an defendant's expert from offering any testimony after the expert's report "forced [the plaintiffs] to ferret out [the expert's] undisclosed opinions through a deposition," and the expert's opinions remained inadequately disclosed even after the deposition was complete); *Conrad v. Westport Marine, Inc.*, No. 09-cv-49-bbc, 2009 WL 3226288, at *2 (W.D. Wis. Oct. 1, 2009) (granting the defendants' motion to strike and disallowing the plaintiffs from using an expert or his report, because the "report repeatedly and aggressively violate[d] Rule 26(a)(2) and the[] violations [were] neither justified nor harmless"); *see also Lauer v. NIC Industries, Inc.*, No. 17-cv-655-wmc, 2018 WL 2271169, at *4 (W.D. Wis. May 17, 2018) (granting in part the defendant's motion to strike and limiting an expert to testifying "to the limited opinions contained in his report" as a sanction for the report's violation of Rule 26(a)(2)).

## CONCLUSION

Defendant Jessica Grailer respectfully requests that the Court strike Laurence Lieb's expert report under Fed. R. Civ. P. 37(c)(1) and preclude the plaintiffs from using Lieb's testimony or report in this action.

Respectfully submitted this 26th day of February, 2024.

*/s/ Matthew Splitek*
Matthew Splitek (SBN 1045592)
QUARLES & BRADY LLP
33 E. Main Street, Suite 900
Madison, WI 53703
(608) 251-5000
matthew.splitek@quarles.com

Johanna M. Wilbert (SBN 1060853)
Shauna D. Manion (SBN 1091704)
QUARLES & BRADY LLP

31

411 E Wisconsin Avenue
Milwaukee, WI 53202
(414) 277-5000
johanna.wilbert@quarles.com
shauna.manion@quarles.com

Lauren C. Bolcar
QUARLES & BRADY LLP
2020 K Street NW, Suite 400
Washington, D.C. 20006
(202) 372-9600
lauren.bolcar@quarles.com

*Attorneys for Jessica Grailer*